NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 230043-U

NO. 4-23-0043

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
October 3, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Livingston County |
| BRANDON AQUISTO, | ) | No. 18CF166 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jennifer H. Bauknecht, |
| | ) | Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Justices Harris and Knecht concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Because prejudice from defense counsel's erroneous legal opinion is unarguable,
the summary dismissal of the petition for postconviction relief was justified.

¶ 2    In a bench trial, the circuit court of Livingston County found defendant, Brandon

Aquisto, guilty of drug offenses. He is serving sentences of imprisonment for those offenses. He

petitioned the court for postconviction relief. In his *pro se* petition, he claimed that defense counsel

had rendered ineffective assistance. The deficient performance, according to the petition, was

defense counsel's act of agreeing with the court and the prosecutor that a sentence of imprisonment

for the charged offenses would be served at 75% (given the maximum amount of good-conduct

credit), whereas, actually, a prison sentence would be served at 50%. The court summarily

dismissed the petition, finding that it was frivolous or patently without merit. Defendant appeals.

In our *de novo* review, we conclude that an essential element of ineffective assistance—prejudice—is unarguable under the circumstances of this case. Therefore, we affirm the judgment.

¶ 3                              I. BACKGROUND

¶ 4        In all five counts of the information, the date of the charged offense was June 6, 2018. Count I charged defendant with aggravated participation in methamphetamine manufacturing (720 ILCS 646/15(b)(1)(B) (West 2018)), a Class X felony (*id.* § 15(2)). Count II charged him with methamphetamine-related child endangerment (*id.* § 50(a)(1)), a Class 2 felony (*id.* § 50(a)(2)). Count III charged him with possession of methamphetamine-manufacturing materials (*id.* § 30(a)), a Class 2 felony (*id.* § 30(b)). Count IV charged him with unlawful delivery of methamphetamine (*id.* § 55(a)(1)), a Class 2 felony (*id.* § 55(a)(2)(A)). Count V charged him with unlawful use of property for the manufacture of methamphetamine (*id.* § 35(a)), a Class 2 felony (*id.* § 35(b)).

¶ 5        The parties appear to agree that because the amount of methamphetamine that the police recovered was less than 100 grams, each day of good conduct in prison would reduce the term of imprisonment by one day. See 730 ILCS 5/3-6-3(a)(2)(v), 2.1 (West 2018). If, on the other hand, "the substance containing the controlled substance or methamphetamine" had been "100 grams or more," the offender could "receive no more than 7.5 days sentence credit for each month of his or her sentence of imprisonment." *Id.* § 3-6-3(a)(2)(v). But the amount of substance in this case was less than 100 grams. Therefore, a prison sentence would be served at 50% instead of 75%.

¶ 6        On May 30, 2019, the parties appeared for the scheduled bench trial. The prosecutor asked the circuit court if it "was planning on the pretrial admonitions regarding offers." The court began so admonishing defendant. After explaining to him the minimum and maximum punishment

for each of the five counts, the court asked him if he understood the range of penalties. He replied in the affirmative.

¶ 7        The circuit court then asked the prosecutor:

"THE COURT: And, Mr. Yedinak, did the State enter into negotiations with defense counsel?

MR. YEDINAK: We did, Your Honor.

THE COURT: And was an offer extended?

MR. YEDINAK: Yes, Your Honor.

THE COURT: What was that offer?

MR. YEDINAK: The original offer in the case, Your Honor, was 23 years in the Illinois Department of Corrections. The last offer that was tendered to Mr. Ripley [(defense counsel)] was 18 years in the Department of Corrections.

THE COURT: And is that at 50% good time?

MR. YEDINAK: There's, one of the things I need to check on, Your Honor; and I apologize. I forgot my code book. I believe Count [I] may be 85% or 75%, but otherwise that was the offer. And I just want, I would need time to double check that.

THE COURT: Okay. So I'm looking at my little cheat sheet here that says participation in methamphetamine manufacturing is a 75%.

MR. YEDINAK: Yes. So Count [I] would be, Your Honor, 75%.

THE COURT: All right. I mean, would the code help you double check that?

MR. RIPLEY: Judge, I would concede that it's 75.

- 3 -

THE COURT: Is it 75?

MR. RIPLEY: It is.

THE COURT: Okay. All right. So, Mr. Ripley, is that the last offer that you received, 18 years?

MR. RIPLEY: It was, Judge. We had made a counteroffer to that which we were not able to come to an agreement on.

THE COURT: So was the 18 year offer conveyed to [defendant]?

MR. RIPLEY: Yes.

THE COURT: And that's the offer, the last offer you received from the State, [defendant], is 18 years?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And you understand that's at 75%?

THE DEFENDANT: Yes.

* * *

THE COURT: Okay. Now whether or not you accept this offer is your decision. You should consult with your attorney, and I would encourage you to rely on his advice. But ultimately in the end you decide whether to accept the offer or not.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: And, Mr. Ripley, I guess he didn't say this; but I presume by the fact that we're going forward with the trial today and that a counteroffer was made with no response—

MR. RIPLEY: No, no. I won't say there was no response from the State.

THE COURT: Oh, pardon me.

MR. RIPLEY: I'm sorry. If I misstated that, I apologize. For the record, the State declined our counteroffer.

THE COURT: Gotcha.

MR. RIPLEY: Mr. Yedinak and I have spoken several times over the last week, and I had come to him with what our final proposal was. He considered that over the weekend and responded to me sometime Tuesday morning that they were at their lowest number.

* * *

THE COURT: Okay. So, [defendant], then, I'm just confirming that you are rejecting the State's offer of 18 years.

THE DEFENDANT: Yes, Your Honor."

¶ 8　　　In the ensuing bench trial, the circuit court found defendant guilty of all five charged counts.

¶ 9　　　On October 31, 2019, the circuit court sentenced defendant to concurrent terms of 25 years' imprisonment for count I and 7 years' imprisonment for count IV. The sentencing order noted that these prison terms were to be "served at 50%."

¶ 10　　　Defendant took a direct appeal. On February 24, 2022, we affirmed the circuit court's judgment. *People v. Aquisto*, 2022 IL App (4th) 200081, ¶ 7.

¶ 11　　　On October 26, 2022, defendant filed a *pro se* petition for postconviction relief. (In an attached affidavit, he explained that, "[d]ue to Covid-19 restrictions, mail delay, [and] a tactical team shakedown of Hill Correctional Center," he had been unable to get his petition "notarized

- 5 -

and sent in [the] required time.") Under the preprinted language of the petition, "Fully state here how you were denied a fair trial," defendant wrote:

> "I *** rejected a plea offer of 18 years to be served at 75% based on deficient advice of counsel and improper admonishment by the court of what count I in the indictment was to [be] served at. (See Exhibit A). Having then stood trial and was sentenced to 25 years under the correct statute that carries 50%, I was denied effective Assistance of Counsel. But for the ineffective advice of counsel, the corrected plea agreement of 18 years at 50% would have been presented to the court, i.e., that I *** would have accepted the plea and also the court would have accepted its terms, and that the conviction or sentence under the offer's terms would have been less severe than under the Judgment and Sentence that were in fact imposed."

The referenced exhibit A was the transcript of the plea-offer discussion, quoted in paragraph 7, above. The other exhibit was exhibit B, a copy of the Supreme Court's decision in *Lafler v. Cooper*, 566 U.S. 156. Those two exhibits were the only supporting materials attached to the petition. The affidavit by defendant merely explained why the petition was late.

¶ 12        On November 29, 2022, the circuit court summarily dismissed the petition.

¶ 13        This appeal followed.

¶ 14                                II. ANALYSIS

¶ 15        Within 90 days after a postconviction petition is filed, the circuit court may summarily dismiss the petition if the court determines it is "frivolous or *** patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2022). We review the summary dismissal *de novo*. *People v. Lewis*, 2017 IL App (1st) 150070, ¶ 14.

¶ 16        "In the review of a first-stage postconviction petition, well-pled factual allegations in a petition and its supporting evidence must be taken as true unless they are positively rebutted by the record, but nonfactual and nonspecific assertions which merely amount to conclusions are not sufficient." *Id.* "Although defendant need only set forth the gist of a constitutional claim at this stage and need not set forth the claim in its entirety," the defendant must "clearly set forth the respects in which his [or her] constitutional rights were violated" and must "attach affidavits, records[,] or other evidence supporting the allegations" or, alternatively, give a valid excuse for the omission of such supporting materials. *Id.*

¶ 17        The question at the first stage is whether the petition and its supporting materials make an "arguable" claim that the defendant's constitutional rights were substantially violated. (Internal quotation marks omitted.) *Id.* ¶ 13. Thus, if the petition accuses defense counsel of having rendered ineffective assistance, the question is whether "(i) it is *arguable* that counsel's performance fell below an objective standard of reasonableness and (ii) it is *arguable* that the defendant was prejudiced." (Emphases in original and internal quotation marks omitted.) *Id.* ¶ 16.

¶ 18        A claim of ineffective assistance in plea negotiations is made up of two elements, the two-part test in *Strickland v. Washington*, 466 U.S. 668, 687 (1984): (1) deficient performance and (2) resulting prejudice. *People v. Hale*, 2013 IL 113140, ¶ 15. To establish prejudice, the defendant must provide more than his own "subjective, self-serving testimony" that, but for defense counsel's erroneous advice, he would have accepted the plea offer. (Internal quotation marks omitted.) *Id.* ¶ 18. "Rather, there must be independent, objective confirmation that defendant's rejection of the proffered plea was based upon counsel's erroneous advice, and not on other considerations." (Internal quotation marks omitted.) *Id.* Defendant "must also demonstrate a reasonable probability that the plea would have been entered without the prosecution canceling it

or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law." (Emphasis and internal quotation marks omitted.) *Id.* ¶ 19. The reason why all these demonstrations are necessary is that prejudice, in a claim of ineffective assistance, is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (Internal quotation marks omitted.) *Id.* ¶ 18.

¶ 19        Defendant's self-serving assertion in his petition—that, but for defense counsel's mistake about good-conduct credit (see 730 ILCS 5/3-6-3(a)(2)(v) (West 2018)), defendant would have accepted the State's offer of 18 years—does not arguably establish prejudice. See *Hale*, 2013 IL 113140, ¶ 18. Instead of being an allegation of fact, this counterfactual assertion is a conclusion, which we do not assume to be true. See *Lewis*, 2017 IL App (1st) 150070, ¶ 14. Nor does the transcript attached to the petition establish arguable prejudice. Rather, it establishes that *before* defense counsel mistakenly agreed that a prison sentence would have to be served at 75%, defendant rejected the State's offer of 18 years. Before the parties appeared for the bench trial— before the circuit court, the prosecutor, and defense counsel arrived at their misguided understanding that a prison sentence would be served at 75%—defendant made a counteroffer, thereby rejecting the State's offer.

¶ 20        The supreme court has explained:

"Although the application of contract law principles to plea agreements may require tempering in some instances in order to satisfy concerns for due process, plea agreements are nonetheless subject to traditional principles of contract law absent such concerns. [Citations.] Pursuant to traditional principles of contract, the legal effect of a counteroffer is the rejection of a standing offer. [Citation.] A rejected offer cannot be revived by a later acceptance. [Citations.] When a

defendant rejects a State offer, the parties go back to the drawing board. [Citation.]" (Internal quotation marks omitted.) *People v. Henderson*, 211 Ill. 2d 90, 103-04 (2004).

In the record before us, we see no suggestion—let alone any supporting evidence (see 725 ILCS 5/122-2 (West 2022))—that *before defendant made his counteroffer*, defense counsel told him that a prison sentence would have to be served at 75%. All we know from the record is that *after the counteroffer*, defense counsel agreed with the circuit court and the prosecutor that the prison sentence would have to be served at 75%.

¶ 21   To be sure, by so agreeing, defense counsel rendered deficient performance. Because the amount of methamphetamine the police recovered was less than 100 grams, the prison sentence would be served at 50% instead of 75%. See 730 ILCS 5/3-6-3(a)(2)(v) (West 2018). Thus, the first element of ineffective assistance, deficient performance, is more than arguable. The deficient performance, however, caused no apparent prejudice. Defendant could not have rejected the State's plea offer in reliance on defense counsel's misguided concession, for by the time defense counsel made the concession, there was no longer any plea offer to reject. See *Henderson*, 211 Ill. 2d at 103-04. Defendant had already rejected the offer by making the counteroffer. The record appears to lack evidence that when defendant rejected the plea offer, defense counsel had as yet given him any advice about good-conduct credit. Prejudice, therefore, is unarguable. See *Lewis*, 2017 IL App (1st) 150070, ¶ 16. This essential element of ineffective assistance is missing. See *Hale*, 2013 IL 113140, ¶ 17.

¶ 22          III. CONCLUSION

¶ 23   For the foregoing reasons, we affirm the circuit court's judgment.

¶ 24   Affirmed.